Good morning, Your Honors. May it please the Court, my name is Attorney Nora Milner. I'm representing Petitioner herein, Javier Hern-Angeles. Good morning. Your Honors, I'd like to address three important issues with the Court today, and I believe particularly based on the new cases that the Court presented for our review this morning. Jurisdiction is probably the most important element that needs to be addressed today, and I believe that we're ready to proceed based particularly on the new cases that were presented. I think we probably assume we have jurisdiction. Thank you, Your Honor. To examine whether we have jurisdiction, so why don't you proceed with that line. Yes, Your Honor. The Court will, as indicated in the release Otherwise we wouldn't have handed you cases saying that. Thank you, Your Honor. As the Court's indicated in the new cases that were given, Larise, as well as Azweta, and the cases that we've already provided to the Court, National Industries and Harris, the issue really is an abuse of discretion. This Court retains jurisdiction to look at the issue of abuse of discretion whenever an agency ignores a vast wealth of information and information. And I think that's what's wrong with the BIA's refusal to reopen. Your Honor, the main problem with the BIA's decision is that it did not address the three important new equities that were provided by Petitioner, those being, number one, the acquisition of his own business, number two, the acquisition of his own home, is now a homeowner in the United States, and probably the most important element would be the change in custodial arrangements with his daughter. He is now the full-time custodial parent. His daughter lives with him. Those are items that while All of these occurred or came into being subsequent to the prior ruling? They did, Your Honor. And not only were they not just an indication of the passage of time, as indicated by the Board, they were proactive activities or proactive behavior taken by the Petitioner in order to create new and important equities in the United States. They were a part of his life. In other words, they were things he went out and did after the initial denial to improve his chances for success? No, Your Honor. They were not necessarily done to improve his chances. They were done as a part of his life to improve the relationship with his daughter. His main goal throughout all of the years that his daughter has been in his life has been to be a very important member of her life. He went to court in her early years to establish that relationship and to make sure that the mother would not remove custodial arrangements from his daughter. He remained a very active participant, unlike so many, sadly, deadbeat fathers that have to be chased to support their children. Petitioner was never that type of an individual. He was very involved in his daughter's life. The acquisition of his own home, the acquisition of his own business, demonstrate that this is an individual who is proactive in his life. He wants to succeed in life. And his goal is to continue to provide a safe and stable environment for his daughter, as well as certainly for himself. These items were not addressed by the Board. Their decision indicated that it was merely cumulative. In fact, the actual decision rendered by the Board made no mention whatsoever of these three equities. It merely stated that the new evidence presented was nothing more than cumulative and due to a passage of time. It primarily dealt on the separation factor but it did not address those important equities. I'm having difficulty understanding why getting a new business and getting a new home increases the extreme hardship to his daughter of his leaving. Yes, Your Honor. It increases the extreme hardship to him because he may be losing an investment. But why does it increase the extreme hardship to the daughter? Because she could have lived better and she now won't live better. Is that it? Not necessarily, Your Honor. I recognize your point. However, his acquisition of the new business provides him the opportunity to become more financially stable. As he is more financially stable, he's better able to provide a better lifestyle for his daughter, hopefully to be able to send her on to college. She is an honor student and she's done very well. We're talking about extreme hardship. Yes, Your Honor. We're not talking about a lost opportunity of living better. Extreme hardship, however, Your Honor, can be looked at in the cumulative effects of all of the equities in the case. One of the things that we've seen is that extrapolating just one element doesn't necessarily make or break a case. In this situation, the petitioner had taken a lot of proactive steps. He had been very involved in his daughter's life. These were new factors that arose after the denial by the immigration judge. And there was new evidence, contrary to what the board said, that there was no new evidence. In fact, there was new evidence. And by failing to address that, the board ignored, for example, the board ignored the evaluation made by a licensed clinical social worker of the hardship that would be endured by the family. That was not addressed in the board's decision. These are so egregious that they amount to a denial of due process and therefore result in an abuse of discretion. So we believe that clearly the factor of the abuse of discretion should be, should allow this board, should allow this Court to go behind the fact that this is simply a discretionary-type case. Government counsel has argued that because... But even if we were to agree with you... Yes, Your Honor. ...what would happen is that your client, the petitioner, would be able to reopen... Correct. ...present this evidence, and then presumably the authorities would make another discretionary decision. And if that decision were to be to deny your client relief, there would be no remedy here. That's correct, Your Honor. Petitioner has come to this Court basically asking for an opportunity to go back to review this matter in the proper tribunal, that being the immigration court. I think we understand your argument. You've got about three minutes left. Why don't you stay with me? Thank you, Your Honor. Thank you very much. Mr. Conner. Now, as you get up there, let me tell you why I wanted this case to go last. Did you write the brief in this case? I did not, Your Honor. Do you know who did? A colleague who's been detailed to our office by the Civil Division of the Department of Justice. I'm quite bothered by the fact that on a critical and important issue, that is, whether we have jurisdiction, your brief cites Fifth Circuit debrief, cites Fifth Circuit authority, which is directly contrary to Ninth Circuit authority, which was handed to you this morning, and doesn't cite that Ninth Circuit authority. Do you know how that occurred or why it occurred? Unfortunately, I can't speak intelligently as to why that didn't occur, Your Honor. I wasn't involved in writing the brief. But you do understand you have a responsibility when you come to argue a case like this to look at the briefs. That's why we have Rule 28J, which allows the supplementation of the brief. I understand, Your Honor. This is pretty serious stuff. The brief on one of the two most important issues in this case argues that we don't have jurisdiction in this instance, in other words, to examine whether we have jurisdiction, and cites a Fifth Circuit case that is absolutely contrary to a long string of Ninth Circuit cases. I understand, Your Honor. I'll make that well known in the office. Well, I suspect we may make it known. But the message is, you know, that's part of being professional, being a lawyer, and it's part of representing the United States Department of Justice. It's not the Department of Prosecution or the Department of Removal of People from the Country. It's the Department of Justice. And you have a particular responsibility to play straight with the court. Do you understand that? Yes, Your Honor. I understand. This is very serious stuff. This is not a misspelling. This is not a miscitation. This is deliberately not citing available Ninth Circuit published authority on a point and then citing Fifth Circuit authority that's contrary to our own law. Yes, Your Honor. Okay. I hope you'll take that message back. I will, Your Honor. You want to proceed to the reopening portion of this before us, whether there was error in the VIA's declination to reopen? Yes, Your Honor. The government asserts that the board did not abuse its discretion in finding that Petitioner's new evidence on hardship was cumulative and not significantly different from the original evidence that was presented in the merits hearing on his cancellation, application for cancellation removal. That position makes perfect sense to me with respect to the first two, but I have something of a question about the third one, and that is now that he has sole custody. Tell us why that's not and would not qualify as an exceptional circumstance. Your Honor, because it was not the case. That was not the evidence that was presented to the board. At the time he filed the motion to reopen, they were talking prospectively that when she started the new school year, they had discussed that she would live with her father. That had not taken place yet, and that he had not gone back to the court, obviously, and in any way changed the custody situation that was set forth by the court. That was completely prospective in nature. So the nature of the record before the VIA on this third element, if you will, was that this was an item under discussion, even planning, but it had not occurred yet. Plus, Your Honor, the board's decision does clearly indicate that they considered all of the evidence that was submitted in the motion to reopen. Now, yes, the government concedes they did not specifically go back and specifically state, okay, in Exhibit B, this is what the respondent is saying in Exhibit C. The board is not required to do that. It's not required to write an exegesis on every point of evidence that's submitted to it. It is clear they considered all the evidence, and the board found that the evidence just would not have made a difference. It was cumulative to the evidence that had been presented before the immigration judge on the cancellation application and that it just was not significantly different from the original evidence that had been submitted. You know, the evidence before the immigration judge was that there was this custody agreement in place. The respondent had the custody of the daughter every other weekend, plus one day a week, also on vacations. But the change thing that was referred to was now this was either planned to be or agreed to be or something, full custody. Yes, Your Honor. That was the allegation in the motion to reopen. Yes, Your Honor. Okay. Well, full custody in the extent that she would live with them during the school year, it would be assumed that the mother would then see her on the weekends, and then during the summers when she was on break, I believe there was a mention in the mother's affidavit that she would have her back during the summers. And again, it's the respondent's burden to show that that new evidence was so significant that it established exceptional and extremely unusual hardship if the father was removed to the daughter. It's a very, very high burden for the petitioner that it must overcome. It must be materially evidence that wasn't available before. I mean, this agreement could easily have taken place at the time of the hearing. So it just was not they didn't meet their burden to show that this was substantially materially new evidence that showed that there would be exceptional and extremely unusual hardship to the daughter. Okay. I think we understand your argument. Before I have you sit down, what did you do before this job? I was in the Army Judge Advocate General Corps as a prosecutor and then a defense appellate attorney. I thought so. Okay. Thank you. Sorry to be hard on you, but when you come in here, you've got the target on your chest. You understand that? I understand, Your Honor. Okay. Thank you. Rebuttal? Thank you, Your Honor. Do I get points for being a Navy JAG? Of course. Thank you. I was in the Marine Corps, so I stand somewhere in between. Thank you, Your Honor. Counsel. Yes. There's a little bit of it's not as important as what Judge Hawkins said, but you, Ms. Milner, file briefs here all the time, and you appear in Ninth Circuit. I want to remind you that when you make an assertion of fact in your brief, you must give a citation of the record. You didn't do that. Yes, Your Honor. Your whole brief was virginal as to those citations. Fully noted. Don't do that again. Yes, Your Honor. Fully noted. Your Honor, just very briefly, I want to just address the fact regarding the custodial arrangement. That information was presented to the board. It was clear through both the clinical social worker and the mother of the child, as well as Denise herself. All three of them testified in their or presented information in their evaluations and their affidavits that, in fact, the custodial arrangement had been changed and that Denise would be living full time with her father, and that had taken place. But is your position that a removable alien proves that there are extraordinary and extreme hardship circumstances to his child if he has custody over the child? Certainly, Your Honor. If he is the primary custodial parent, I believe that his impact, the impact of his absence. Without any medical problems as far as the child is concerned? I believe. Just the fact that a custodial parent is being removed creates, as a matter of law, extraordinary and unusual circumstances. Your Honor, and I understand your point. I believe that that is an important element that should have been given an opportunity for re-review in the immigration court. And I believe that that, in and of itself, as well as the cumulative effect of all of the other factors that go into. What are the factors? The other factors would be. I mean, she's healthy. Yes, Your Honor. She's 18 years old. Correct. She's been living her whole life along with her mother and her stepfather, right? Your Honor, she stated in her declaration that she is extremely close to her father. She seeks him out. They spend a great deal of time together. Even when she was a little girl, she spent most of her important formative times with her father. I believe, again, that Mr. Angelis has only asked for an opportunity to have a re-hearing to let an immigration judge evaluate those new changed circumstances. And that was what we would ask the court to do. It's the conclusion that the immigration judge cannot reject the expert witness which was adduced because he was not contradicted. You mean the licensed clinical social worker? That's correct, Your Honor. There was no evidence. That information. I just can't say I believe you because I don't like your credentials. Well, no, I don't believe he can say that I don't like you because I don't like your credentials. But I believe that at least in another tribunal before an immigration judge, if the government wants to rebut that information, that they would have an opportunity to do so. Okay. Given the board precedent, I think Monreal is the – I may be mispronouncing it. I don't have it at hand. But it's very difficult for me to see how this rises to the level of that can possibly qualify as an exceptional circumstances under the permanent rules. Well, Your Honor, even Monreal has never held that only one factor alone is indicative of exceptional extreme unusual hardship. For example, Monreal doesn't state that only medical conditions will be considered or only psychological conditions will be considered. In fact, many factors can be considered in the overall determination of what is exceptional extremely unusual hardship. As counsel has indicated, it is a higher standard. But there should always be room for an element of humanity, an element of seeking all of the factors that weigh in and the cumulative effect of those factors. Thank you, Your Honor. Thank you for your argument. The case just argued will be submitted, and the court will stand in recess until 9 o'clock tomorrow morning. Thank you.  Very cool. Yeah. I'll be honored. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Hawkins, Thomas, Bea